## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARYI SHEARER,** | : | **CIVIL ACTION NO. 1:15-CV-1416** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **AIG DIRECT INSURANCE** | : | |
| **SERVICES, INC.,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

## <u>MEMORANDUM</u>

Plaintiff Daryi Shearer ("Shearer") brings this action against defendant AIG Direct Insurance Services ("AIG Direct") pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Doc. 1). Before the court are AIG Direct's motion (Doc. 16) for summary judgment and motion (Doc. 23) *in limine*. The court will deny AIG Direct's motion for summary judgment, and will grant AIG Direct's motion *in limine*.

I.      **Factual Background & Procedural History**[1]

AIG Direct is an insurance provider that sells life insurance products.  (Doc. 18 ¶ 3).  AIG Direct maintains a website through which interested consumers may request quotes for life insurance policies.  (Id.)  The website proclaims that "[i]t takes 2 minutes to request your term life quote."  (Id. ¶ 3).  To obtain that quote, prospective patrons must use the website's interactive form.  (Id.)  The form contains several fillable boxes in which a user may enter personal identifying information, including his or her name, physical characteristics, email address, date of birth, and pertinently, primary and secondary telephone numbers.  (Id. ¶¶ 3-6).  After the user enters their personal information, he or she may submit the form by clicking on a button labeled "Get Your FREE Quote!"  (Id. ¶ 3).  In the space between the form's boxes and the button, the website's text plainly explains that AIG Direct may call users who provide their personal information using the website's form:

> By submitting this request, I consent to receive phone calls from AIG Direct, regarding AIG Direct's products and services, at the phone number(s) above, including my wireless number if provided.  I understand these calls

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 18, 20).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

> may be generated using an automated technology.  I
> understand that consent is not required to make a
> purchase.

(Id.)

The AIG Direct life insurance website received a form containing Shearer's personal information on May 9, 2015. (Doc. 17-7).  The form included Shearer's full name, primary and secondary phone numbers, email address, date of birth, and identifying physical characteristics.  (Id.)  Shearer's internet provider confirmed that Shearer's data was submitted to AIG Direct using a computer located at his physical address.  (Doc. 17-3; Doc. 17-5 ¶ 6).

AIG Direct's computer system maintains a log of each call that it places to people who request life insurance quotes.  (Doc. 17-5 ¶¶ 6-7).  AIG Direct records all conversations between its employees and potential customers in such an individualized call log.  (Id.)  Shearer's log reveals that AIG Direct called Shearer 25 times between May 9, 2015 and July 7, 2015.  (Doc. 17-8).  AIG Direct avers, however, that it has two recorded conversations between its representatives and Shearer because Shearer only spoke with AIG Direct employees twice.  (Doc. 17-5 ¶¶ 9-11).  The log reflects that AIG Direct's employees spoke with Shearer for 111 seconds on June 8, 2015, and for 19 seconds on July 7, 2015, the last call on the log.  (Doc. 17-8).  The log contains records of four other phone calls that Shearer apparently answered.  (Doc. 17-5 ¶¶ 9-11).  AIG Direct denies that recordings of those calls hold any content because they were terminated before any conversation took place.

(Id.)  The log also has records of 19 other phone calls that AIG Direct placed to Shearer's cellular telephone number.  (Id.)  AIG Direct maintains that it has no recordings of those phone calls because Shearer did not answer them.  (Id.)

AIG Direct notes that, during the June 8, 2015 conversation, Shearer discussed his life insurance quote with an AIG Direct agent.  (Doc. 17-5 ¶ 10).  AIG Direct's counsel played the recording at Shearer's deposition.  (Doc. 17-2, Shearer Dep. 46:10-48:15, Feb. 15, 2016 ("Shearer Dep.")).  Shearer did not ask the agent to stop AIG Direct's calls during that conversation.  (Id.)  Shearer instead inquired as to the purpose of the call and answered several of the agent's questions.  (Id.)  AIG Direct's counsel also played a July 7, 2015 call between Shearer and an AIG Direct representative.  (Id. 42:4-12).  At that time, Shearer informed the representative that he had previously asked AIG Direct "to take [his] name off the list" and that he wanted AIG Direct to stop calling his telephone number.  (Id.)  The agent promptly ended the call.  (Id.)  No further attempts to contact Shearer appear in AIG Direct's call log or in telephone records that Shearer provided during discovery. (Doc. 17-4; Doc. 17-8).

Shearer's account differs from AIG Direct's recitation of the facts.  According to Shearer, AIG Direct started calling him in March or May 2015.  (Doc. 20 ¶ 24). When he answered AIG Direct's phone calls, he received an automated message that identified the caller as AIG Direct Insurance Services.  (Doc. 20-2 ¶ 3).  He also maintains that he received four or five calls from AIG Direct per day.  (Id.)  Shearer ostensibly asked AIG Direct representatives to stop calling him in March 2015, but the calls continued through July 2015.  (Id.)  He describes another discussion in

which he instructed an AIG Direct representative to stop the company's telephone calls.  (<u>Id.</u> at ¶ 8).  Shearer claims that the representative laughed at him, and that the telephone calls continued.  (<u>Id.</u>)  Shearer nevertheless conceded during his deposition that he had no recollection of asking any AIG Direct representative to stop calling him prior to July 2015.  (Shearer Dep. 46:5-8).  Shearer denies ever requesting an AIG Direct life insurance quote.  (<u>Id.</u> at 45:24-48:17).  He speculates that his wife, Elizabeth Shearer, may have requested it on his behalf and without his permission.  (Doc. 20 ¶ 9).

Shearer initiated the case *sub judice* by filing a complaint (Doc. 1) on July 21, 2015.  Therein, Shearer asserts one statutory claim: that AIG Direct violated the TCPA by purposefully initiating several automated, non-emergency telephone calls to his cellular phone number without obtaining his prior express consent.  (Doc. 1 ¶¶ 23-28).  AIG Direct filed its motion (Doc. 16) for summary judgment on March 28, 2016.  It also filed a motion (Doc. 23) *in limine* on July 8, 2016.  AIG Direct's motions are fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to

sustain a judgment in favor of the non-moving party on the claims.  <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v.</u>

<u>Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may

the cause of action proceed.  <u>See</u> <u>Pappas</u>, 331 F. Supp. 2d at 315.

**III.**   <u>**Discussion**</u>

AIG Direct avers that the court should grant its motion for summary

judgment because Shearer has failed to establish the requisite elements of a TCPA

claim.  To wit, AIG Direct asserts that Shearer did not make a sufficient evidentiary

showing with regard to the element of consent.  Shearer submits two genuine issues

of material fact for the court's consideration: (1) that he never granted AIG Direct

consent to call his cellular telephone number, and (2) that AIG Direct exceeded the

scope of any consent he granted by continuing to call his telephone number after he

demanded that the calls stop.

AIG Direct further argues that the court should grant its motion *in limine*

because Shearer may offer testimony at trial based on pure speculation, to wit: that

Shearer's wife may have requested a life insurance quote from AIG Direct on his

behalf and without his knowledge.  The court will address these issues *seriatim*.

**A.**   **Summary Judgment**

The TCPA provides that no entity may initiate telephone calls to cellular or

residential telephone lines using automatic dialing apparatuses, artificial voices, or

prerecorded messages.  47 U.S.C. § 227(b)(1)(A)(iii).  A private cause of action is

available to those whose phones receive calls in violation of the TCPA.  <u>Id.</u>  The

statute also explains that the cause of action does not accrue if the calls were placed

with "prior express consent of the called party." Id.  Congress has empowered the

Federal Communications Commission ("FCC") to implement rules and enforce the

TCPA.  Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268-69 (3d Cir. 2013) (citing 47

U.S.C. § 227(b)(2)).  In its rules, the FCC has stated that automatically dialed

telephone calls to landlines and cellular lines are permissible provided that "the

recipient has granted 'permission to be called at the number which they have given,

absent instructions to the contrary.'"  Gager, 727 F.3d at 269 (citing In the Matter of

Rules & Regulations Implementing the Telephone Consumer Protection Act of

1991, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992) (emphasis removed)).  The FCC has

further ruled that prior express consent is an affirmative defense with respect to

prerecorded phone calls and automated voice messaging.  In the Matter of Rules

and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23

FCC Rcd. 559, 564 ¶ 9 (Jan. 4, 2008).

With its motion, AIG Direct presents record evidence indicating that Shearer

filled out its interactive form for prospective life insurance buyers.  (Doc. 17-7).  AIG

Direct provides a sample interactive form.  (Doc. 17-6).  AIG Direct also submits a

data sheet containing Shearer's personal information, which was submitted from a

computer located at Shearer's physical address.  (Docs. 17-3, 17-7).  The form

contains an express waiver definitively granting AIG Direct permission to call the

user: "[b]y submitting this request, I consent to receive phone calls from AIG

Direct, regarding AIG Direct's products and services, at the phone number(s)

above, including my wireless number if provided."  (Doc. 17-6).  Shearer rejoins

that he never encountered this form.  (Doc. 20 ¶ 8).  Shearer instead asseverates that

7

his wife, with whom he lives, may have requested a life insurance quote from AIG

Direct on his behalf.  (Doc. 19 at 9).

Shearer's abstruse contention fails to withstand the Rule 56 standard.  As the

movant, AIG Direct has the initial burden of identifying evidence that manifests an

absence of genuine issues of material fact.  <u>Childers v. Joseph</u>, 842 F.2d 689, 694

(3d Cir. 1988) (citing <u>Celotex</u>, 477 U.S. at 324).  An issue is genuine if a jury

considering the evidence could find in favor of the nonmovant with respect to each

element of the claim.  <u>Anderson</u>, 477 U.S. at 248; <u>Pappas</u>, 331 F. Supp. 2d at 315.

The non-moving party "must adduce more than a mere scintilla of evidence in its

favor."  <u>Williams v. Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989) (citing

<u>Anderson</u>, 477 U.S. at 249)).  AIG Direct produces a profusion of record evidence

demonstrating the absence of genuine issues of material fact.

Conversely, Shearer provides no supporting record evidence with regard to

the issue of consent.  The court instead perceives that Shearer's claims are based on

pure speculation.  Shearer advances no record evidence denying that AIG Direct's

form contained an express consent term for its use or that his computer was in use

at the time AIG Direct received the form.  Shearer instead proffers mere conjecture

in his brief (Doc. 19 at 9) in opposition to summary judgment, and supplicates that

his wife *may* have used his personal computer to submit the interactive form to AIG

Direct.  (<u>Id.</u>)

Shearer's arguments regarding the existence of consent do not withstand the

requirements of Rule 56.  Simply proffering "believable" theories in hopes of

weathering AIG Direct's motion for summary judgment is inadequate to reclaim

8

one's cause of action.  Summary judgment motion practice tasks a non-moving

party to "rebut the motion with facts in the record."  Berckeley Inv. Grp., Ltd.

v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (quoting Jersey Cent. Power & Light Co.

v. Lacey Twp., 772 F.2d 1103, 1109-10 (3d Cir. 1985)).  Thus, the nonmovant cannot

rely exclusively on unproven assertions to overcome a Rule 56 motion.  See El v. Se.

Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007) (citing Berckeley Inv. Grp., 455

F.3d at 201).  Rather, as the party bearing the burden of proof at trial, Shearer

"must point to *some* evidence in the record that creates a genuine issue of material

fact."  Berckeley Inv. Grp., 455 F.3d at 201 (emphasis added).  Moreover,

"arguments made in briefs 'are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion.'"  Eastman

v. Lackawanna Cty., 95 F. Supp. 3d 773, 783 (M.D. Pa. 2015) (quoting Jersey Cent.,

772 F.2d at 1109-10).  The court accordingly concludes that Shearer did not

demonstrate a genuine issue of material fact with respect to the existence of

consent.

Shearer next argues that, to the extent he granted AIG Direct consent to call

his phone number, there is a genuine issue of material fact with respect to his

withdrawal of that consent.  If a consumer consents to telephone calls from entities

using automated dialing services or prerecorded voices, that consent may later be

withdrawn pursuant to common law contract and tort principles.  Gager, 727 F.3d at

270-71; In the Matter of Rules & Regulations Implementing the Telephone

Consumer Protection Act of 1991, 27 FCC Rcd. 15391, 15397-98 ¶¶ 11-12 (Nov. 29,

2012).  Further use of automated dialing and prerecorded messaging is violative of the TCPA upon revocation of consent.  <u>Gager</u>, 727 F.3d at 273-74.

In its motion for summary judgment, AIG Direct avers that there is no genuine dispute of material fact as to the scope of Shearer's consent.  Counsel for AIG Direct played the two recorded conversations between Shearer and AIG Direct representatives during Shearer's deposition.  (Shearer Dep. 42:4-12, 46:10-48:15). During the first call (dated June 8, 2015) Shearer made no statement concerning a withdrawal of consent.  (<u>Id.</u> at 46:10-48:15).  Shearer instead engaged with an AIG Direct representative and answered several of the representative's questions.  (<u>Id.</u>) The other available recording in the instant case derives from the July 7, 2015 telephone call.  (<u>Id.</u> at 44:4-9).  During that call, Shearer "told [AIG Direct] to take my name off the list.  I've already reported you guys, so stop calling me."  (<u>Id.</u>)  Soon after AIG Direct's counsel played the July 7, 2015 phone call, counsel asked Shearer if he had "any recollection of ever[] telling AIG to stop calling you before this call in which you told them to stop calling you?"  (<u>Id.</u> at 46:5-8).  Shearer answered "[n]o, I do not."  (<u>Id.</u>)

Shearer rejoins that AIG Direct possibly called him as early as March 2015, and that he directed AIG Direct to cease calling him prior to July 2015.  (<u>Id.</u> at 49:3-15; Doc. 20-2 ¶ 3).  Shearer provides deposition testimony and sworn interrogatory answers to this effect.  (Shearer Dep. at 49:3-15; Doc. 20-2 ¶ 3).  In his deposition, Shearer asservated that, when speaking with an AIG Direct representative sometime before July 2015, he "told [AIG Direct] to take my name off

the list." (Shearer Dep. at 44:4-9). He also provided that when he spoke with another AIG Direct representative, he again demanded that the calls stop. (Doc. 20-2 ¶ 3). The representative purportedly laughed at his request. (Id.)

The court is cognizant that in the summary judgment context, its "function is not to weigh the evidence or determine the truth of the matter." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 254, 262-63 (3d Cir. 2010) (quoting Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009)). The court instead draws inferences in the light most favorable to the nonmovant. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). In cases where "the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Id. (citing Country Floors, Inc. v. P'ship Composed of Gepner & Ford, 930 F.2d 1056, 1060-61 (3d Cir. 1991)).

In the instant case, AIG Direct presents record evidence that squarely contradicts Shearer's deposition testimony. Shearer is nevertheless entitled to rely on deposition testimony and interrogatory answers to overcome AIG Direct's summary judgment motion. Celotex, 477 U.S. at 323; Palm Bay Imps., Inc. v. Miron, 55 Fed. App'x 52, 57 (3d Cir. 2003). Shearer's deposition, in conjunction with his answers to interrogatories, constitute sufficient evidence that he received automated, prerecorded voice messages from AIG Direct on his cellular telephone line for the purpose of selling life insurance. (Shearer Dep. at 49:3-15; Doc. 20-2 ¶ 3). Shearer submits in both his interrogatories and deposition that he never granted AIG Direct permission to call his cellular telephone number, and that AIG Direct continued calling him after he withdrew his consent. When viewing the evidence in

11

the light most favorable to Shearer, the court concludes that AIG Direct has failed to overcome the Rule 56 threshold for summary judgment.  The issue of scope of consent is thus a genuine issue of material fact that should be presented to a jury.

**B.     Motion *in Limine***

In its motion (Doc. 24) *in limine*, AIG Direct requests that this court bar Shearer's testimony concerning the possibility that Shearer's wife requested an insurance quote from AIG Direct on his behalf.  Federal Rule of Evidence 602 provides, in no uncertain terms, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  FED. R. EVID. 602.  In the instant case, Shearer has posited that his wife "could have made the request [for a quote] without [Shearer's] knowledge.  (Doc. 19 at 9).  Nowhere does Shearer provide that he has personal knowledge that his wife made such a request.  Indeed, as noted *supra*, Shearer's contention is seemingly contrived speculation.  The court agrees that allowing Shearer to testify about his wife's possible role in this case would violate Rule 602, and accordingly grants AIG Direct's motion to the extent that Shearer may not testify as to his theory in either direct or cross examination.

**IV.**     <u>**Conclusion**</u>

The court will grant AIG Direct's motion (Doc. 16) for summary judgment.

The court will grant AIG Direct's motion (Doc. 23) *in limine* to the extent that

Shearer may not testify to facts or theories outside his personal knowledge.  An

appropriate order shall issue.


<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        September 29, 2016